**GABER COMPANY, Appellant,**

v.

**Leila RAWSON et al., Appellees.**

**No. 1533.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 9, 1977.

Rehearing Denied March 30, 1977.

Paul W. Persons, Houston, for appellant.

W. James Kronzer, Jr., Nick C. Nichols, Kronzer, Abraham & Watkins, Russell H. McMains, Fulbright & Jaworski, Warren Y. Pennington, Brackeen & Pennington, Houston, for appellees.

CIRE, Justice.

Defendant appeals from a judgment for plaintiff in a wrongful death action.

This suit arises out of a multiple-vehicle accident in which Bryan Rawson was killed. At about 1:00 p. m. on December 9, 1970, a truck traveling northeast on Houston's Southwest Freeway dropped a number of boxes containing lavatories onto the freeway. The truck did not stop. Shortly thereafter, cars encountering the boxes slowed to avoid hitting them, resulting in a four-car collision. The third car in line, driven by the decedent, was hit by a large truck owned and operated by Containerized Refuse Haulers, Inc. A fire broke out and burned the Rawson vehicle, causing the death of both Rawson and his passenger, Robert E. Nolan.

Appellee Leila Rawson, widow of the decedent, brought this wrongful death action against appellant Gaber Co., a wholesale plumbing distributor, alleging that it was a Gaber Co. truck that dropped the boxes of lavatories, causing the accident and her husband's death.

The case was submitted on 26 special issues, and the jury's affirmative answers to the first four issues formed the basis for finding Gaber Co. liable. In the first special issue, the jury found that the truck from which the lavatories fell was owned by Gaber Co. In the second issue, the jury found that the driver of the truck was engaged in the service of Gaber Co. and in the furtherance of its business. Special issue number three read:

Do you find from a preponderance of the evidence that the boxes of sinks or lavatories could have been prevented from falling off the truck by the exercise of ordinary care upon the part of Gaber Company and its employees?

The fourth issue read:

Do you find from a preponderance of the evidence that such failure was a proximate cause of the injuries, if any, and the death of Bryan Rawson?

The jury failed to find any contributory negligence on the part of the decedent. It found that Mrs. Rawson was entitled to compensation for her pecuniary loss in the amount of $167,000; that the decedent would have been entitled to $10,000 as compensation for his physical pain and mental anguish; that the market value of the Rawson vehicle immediately before the accident was $2,000 and that its value after the accident was $25; and that reasonable funeral and burial expenses were $2,000. Based on this verdict, the court entered judgment that Mrs. Rawson, individually and as administratrix of the estate of Bryan Rawson, recover of Gaber Co. $179,-000, plus interest and costs.

Gaber Co. brings this appeal on five points of error. Each of these points attacks the judgment of the trial court on grounds of legal and factual sufficiency. However, appellant has not properly preserved its factual sufficiency points. To do so, they must have been included in a motion for new trial. Appellant's original motion for new trial was timely filed on June 2, 1976. Its amended motion for new trial was filed on June 22, 1976, the last day such motion could have been timely filed. Tex. R.Civ.P. 329b. The amended motion did not contain any ground for new trial asserting that the verdict of the jury was grounded on insufficient evidence or that it was so against the great weight and preponderance of the evidence as to be manifestly unjust. The first two grounds complained of the court's error in overruling its motion for instructed verdict; the next ten grounds complained of the error of the court in overruling defendant's objections to certain issues; and the thirteenth ground complained of the error of the court in "overruling defendant's motion to disregard and set aside Special Issues and the jury's findings thereto . . . ." It was not until July 7, 1976, when appellant filed its "Supplement to Amended Motion for New Trial," that the factual sufficiency points were raised. This supplement had no effect as a motion for new trial. It was not filed within 20 days after the original motion for new trial was filed. Moreover, a party may not file more than one amended motion for new trial. *Draper v. Liberty Mut. Ins. Co.*, 484 S.W.2d 135, 136 (Tex.Civ.App.—Texarkana 1972, writ ref'd n. r. e); Tex.R.Civ.P. 329b. Appellant's points of error thus

present only questions of law. In passing on these points, we consider only that evidence favorable to the appellee, and draw from the facts proven only those reasonable inferences which tend to support the trial court's judgment. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.Sup.1965); *Dictaphone Corp. v. Torrealba*, 520 S.W.2d 869, 870 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n. r. e.).

In its first point of error, appellant asserts that the evidence shows as a matter of law that the boxes on the freeway did not fall from a Gaber Co. truck operated by a Gaber Co. employee in the course and scope of his employment and that there was no evidence to support the jury's finding to that effect.

On the question of ownership, there is the testimony of William L. Gruber and Ruth Anne Vetterick that they saw a Gaber Co. truck drop some boxes at the site of the accident on the afternoon it occurred. They said they were traveling about two car lengths directly behind the truck when a box fell off the back of the truck. They swerved their car to avoid hitting the box, then pulled up beside the driver, blew their horn, and began motioning to him in an attempt to inform him that he was losing boxes. They further testified that they saw more boxes drop off the truck and that after their honking and motioning they saw the driver turn off at the next exit. They proceeded down the freeway and, after crossing an overpass, saw behind them a large cloud of black smoke. Both witnesses testified that the truck carried a sign saying "Gaber Co." Gruber's statement to the police, which was introduced into evidence, stated that the sign he saw was printed on the rear of the truck. However, he and Mrs. Vetterick testified that the sign was positioned over the cab of the truck. W. J. Spaulding, the officer who investigated the accident, testified it occurred on the down slope of the Newcastle overpass on the Southwest Freeway. He saw between seven and ten boxes containing white, 18 inch diameter, lavatory sinks on the eastbound portion of the freeway and took two of

these into custody. He took one of the boxes to the Gaber Co. offices the next day and was told by the dispatcher that the company handled such sinks, but that they had not lost any in this accident.

Appellant next contends that Mrs. Rawson failed to prove that the truck was being operated by a Gaber Co. employee within the course and scope of his employment. Appellant says that appellee must rely upon the "branded truck doctrine" to hold Gaber Co. liable for the negligent acts of its employee committed while driving its vehicle. Appellant correctly states the law to be that proof of the employer's ownership of the vehicle and that the driver was employed by such employer creates a presumption that the driver was acting within the course and scope of his employment when the accident occurred. This presumption can be nullified by positive proof to the contrary. *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex.Sup. 1971); *Broaddus v. Long*, 135 Tex. 353, 356, 138 S.W.2d 1057, 1058 (1940). Appellant argues that it offered such positive proof, the presumption vanished, and appellee was left with no evidence. This argument fails for several reasons. First, this is not an employee deviation case. Second, the argument does not focus upon the conduct complained of in this suit. Mrs. Rawson did not contend that the boxes fell off the truck because of any negligence in the manner in which the truck was driven. The negligence upon which this suit was based, and about which special issue number three inquired, was the failure of Gaber Co. to prevent the boxes from falling off the truck. Gaber Co. had a duty to secure its cargo in a way that would prevent it from falling off the truck and causing havoc on the freeway. It was established that the boxes were loaded by Gaber Co. employees under the direction of Johnnie Harlan, foreman at Gaber Co. He was in charge of the loading dock at the time of the accident. He testified that company drivers under his supervision loaded the trucks and that he had the duty of securing the load on the trucks. In his deposition, read into evi-

dence, Harlan testified that there were no tailgates on the company's flatbed trucks; that the loads, sometimes being two stacks of boxes, were secured with one rope for each stack; that a tarpaulin was sometimes used; and that improperly packed boxes could come out of the truck. The witnesses Gruber and Vetterick testified that the truck was heavily loaded. Third, there was no positive proof by appellant rebutting the presumption and, in addition to the proof that this was a Gaber Co. truck and that on the date of the accident all of their trucks were being operated by Gaber Co. employees, there was further evidence bearing on the course and scope issue. Using his handwritten dispatch log, which was put into evidence, Harlan testified that the one or more trucks with Gaber Co. Signs had been out around the time of the accident making deliveries in the southwest part of town, accessible by the Southwest Freeway. In his deposition, Harlan said that Gaber Co. handled this type of product (a round, 18 inch diameter, white, steel lavatory), and that a load of such lavatories was sent on the day of the accident to one of the locations accessible by the Southwest Freeway. We overrule this point.

Appellant's second point asserts that there was no evidence of negligence on the part of a Gaber Co. employee in the course and scope of his employment proximately causing the accident, nor were there any findings on this issue. We disagree. As just stated, the evidence showed that the only persons involved in the loading process were Gaber Co. employees, and any negligence in loading must have been theirs.

■ Under this point, appellant also contends that special issues three and four were global. However, we view these issues as a broad submission, which the trial court may use in its discretion. *Members Mut. Ins. Co. v. Muckelroy*, 523 S.W.2d 77, 81 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.); Tex.R.Civ.P. 277. The point is overruled.

■ In its third point, appellant contends there was no evidence that the boxes were the cause in fact of the accident and the

resultant death of Mr. Rawson. We cannot agree with this contention. The witnesses Gruber, Mrs. Vetterick, and Cornejo all testified that their cars had to take evasive action to avoid hitting the falling boxes. Furthermore, Cornejo testified that when he looked in his rear view mirror other cars were slowing down and dodging the boxes. Finally, the witness David L. Wamstead testified to the *res gestae* statement made by the driver of the first car that he had to stop or hit the box; Wamstead also stated that there was a box directly in front of this car which the driver had either hit or just came close to hitting. This point is overruled.

■ Appellant's fourth point asserts that the evidence established as a matter of law that the decedent was contributorily negligent in failing to maintain an assured clear distance behind the vehicle it was following, so that it could be safety brought to a stop without a collision, as required by statute, Tex.Rev.Civ.Stat.Ann. art. 6701d, § 61(a) (1977). Appellant bases this contention on the testimony of the truck driver, Thomas, that the decedent was driving his car two or three car lengths behind the preceding car and that he did not have time to apply his brakes before the accident. However, Thomas and the witness Wamstead also testified that there was a blind spot at the scene of the accident and that a driver could not see ahead because of the slope of the road. Thomas testified that all of the traffic on the freeway was traveling at about the same speed, 45 to 50 miles per hour. This was some evidence of a permissible excuse for the alleged violation of the statute, *i. e.*, the deceased was confronted by an emergency not due to his own misconduct. *Impson v. Structural Metals, Inc.*, 487 S.W.2d 694, 696 (Tex.Sup.1972). Appellant had the burden of proof on the question of violation of the statute, *L.M.B. Corp. v. Gurecky*, 501 S.W.2d 300, 303 (Tex.Sup. 1973), and he did not establish the violation as a matter of law. We overrule this point.

■ In his fifth point, appellant asserts that there was no evidence to support

the jury's findings of damages for conscious pain and suffering and pecuniary loss. On the issue of pain and suffering, there was eye-witness testimony that the decedent lived for a very short time after the accident, as well as medical testimony that this was possible. On the question of whether there was any evidence of pecuniary loss, appellant argues that there was no evidence of the condition of Mrs. Rawson's own health, which was pertinent to her life expectancy and thus, to her recovery, and there was no evidence that the decedent had any income at any time or was able to contribute to the support of Mrs. Rawson. Mrs. Rawson testified at trial, and the jury could determine her health or physical condition from her appearance. *See Atlantic Coast Line R. R. Co. v. McDonald*, 50 Ga. App. 856, 179 S.E. 185, 186, *cert. denied*, 296 U.S. 621, 80 L.Ed. 441, 56 S.Ct. 143 (1935). Mrs. Rawson also gave evidence of her husband's income which would support the jury finding on pecuniary loss. This point is overruled.

Affirmed.

J. CURTISS BROWN, C. J., not participating.